## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROBERT JONES,

     Plaintiff,

v.                                  Case No: 8:23-cv-1461-CEH-AAS

THE LAMAR COMPANY, L.L.C.,
LAMAR ADVERTISING, LAMAR
ADVERTISING COMPANY, THE
LAMAR COMPANIES and LAMAR
MEDIA CORPORATION,

     Defendants.

_____/

## **O R D E R**

This matter comes before the Court on Defendants' Amended Motion to Dismiss Amended Complaint (Doc. 18). Defendants seek dismissal of the Amended Complaint under *Rooker-Feldman*.[1] Alternatively, Defendants argue dismissal is warranted based on the principles of *res judicata*, collateral estoppel, and the litigation privilege, and because the Amended Complaint is a shotgun pleading that fails to state a cause of action. Plaintiff opposes Defendants' motion and has filed multiple motions seeking leave to amend his complaint. Docs. 20, 21, 28, 37, 40, 54.[2] Defendants oppose

---

[1] The *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine precludes federal court review of final state-court judgments. *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).

[2] Plaintiff's motions for leave to amend (Docs. 20, 21, 28, 37, 40, 54) are due to be denied because Plaintiff already amended his complaint once as a matter of right, and based on the Court's review of the proposed amended complaints, amendment would be futile.

amendment as futile. The Court, having considered the motion and being fully advised in the premises, will grant Defendants' Amended Motion to Dismiss Amended Complaint and will dismiss this action with prejudice. Because Plaintiff has amended his complaint once as a matter of course, as permitted by Fed. R. Civ. P. 15, and because further amendment would be futile, leave to amend will be denied.

## I.   JURISDICTION

When Plaintiff first filed his Complaint in July 2023, he included a cause of action for violation of his civil rights under 42 U.S.C. § 1983. Doc. 1. Thus, Plaintiff sought to invoke the Court's original jurisdiction pursuant to 28 U.S.C. § 1331 based on his federal claim. Before Defendants answered the Complaint, Plaintiff filed an Amended Complaint, wherein Plaintiff dropped the federal claim and asserted only state law causes of action. Doc. 7. The Amended Complaint alleges the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Federal courts must *sua sponte* inquire into an action's subject matter jurisdiction whenever such jurisdiction may be lacking.  *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004). Because the Amended Complaint did not adequately allege the citizenship of the parties to allow the Court to determine whether subject-matter jurisdiction based on diversity of citizenship exists, the Court issued an Order to Show Cause to Plaintiff. Doc. 47. Additionally, because Defendants identified "Lamar Advertising Company" as an inactive Florida corporation, *see* Doc. 18 at 1, and had not yet filed Disclosure Statements, the Court directed Defendants to promptly file Disclosure Statements pursuant to Local Rule 3.03 and Fed. R. Civ. P. 7.1(a)(2). Doc. 48. The initial

2

corporate disclosures filed by Defendants in response to the Court's order were incomplete (Doc. 49), and the Court directed that amended disclosures be filed (Doc. 50). Defendants filed their amended disclosures on May 8, 2024. Docs. 51, 52. According to the amended disclosures, Defendants are not citizens of Florida. In the Amended Complaint, Plaintiff is alleged to be a citizen of Florida. Doc. 7 ¶ 9. Accordingly, diversity of citizenship exists.

In response to the Court's order to show cause, Plaintiff contends that his newly filed Fourth Amended Complaint gives rise to the Court's original jurisdiction based on federal claims[3] asserted under 18 U.S.C. § 1001,[4] 42 U.S.C. § 1983,[5] and 28 U.S.C. § 1654.[6] Additionally, the Fourth Amended Complaint alleges that the Court has

---

[3] Plaintiff's proposed Fourth Amended Complaint seeks to add claims for violations of 18 U.S.C. § 1001, 42 U.S.C. § 1983, and 28 U.S.C. § 1654. Plaintiff cannot state a claim against Defendants based on these statutes, and thus amendment is futile. Regardless, the Court has determined that diversity jurisdiction exists.

[4] Section 1001 imposes criminal liability for making false statements to federal authorities. *See* 18 U.S.C. § 1001(a); *see also*, *United States v. Fern*, 696 F.2d 1269, 1273 (11th Cir. 1983) ("The purpose of § 1001 is clearly to protect the Government from fraud and deceit. The reach of the statute covers all materially false statements, including non-monetary fraud, made to any branch of the Government."). Moreover, subsection (a) "does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." 18 U.S.C.A. § 1001(b). In any event, section 1001 does not give rise to civil liability.

[5] Similarly, any claim under 42 U.S.C. § 1983 would fail because Defendants were not state actors or acting under color of state law, that is, their challenged actions are not "fairly attributable to the State." *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (quoting *Lugar. v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("For a defendant's actions to be fairly attributable to the state, '[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.'").

[6] Plaintiff's proposed claim under 28 U.S.C. § 1654 fails because this statute does not give rise to a cause of action. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts,

jurisdiction based upon diversity of citizenship of the parties. Doc. 55 ¶¶ 1–6, 8, 9. The Court did not give Plaintiff leave to file a Fourth Amended Complaint.[7] The parties' diverse citizenship having now been established, the Court proceeds to address the operative complaint, the Amended Complaint at Doc. 7, and Defendants' Amended Motion to Dismiss directed to the Amended Complaint. Doc. 18.

## II.    BACKGROUND[8]

Plaintiff, Robert Jones, who is proceeding *pro se*, initiated this action against Defendants on July 3, 2023. Doc. 1. Before Defendants responded to the initial complaint, Plaintiff filed an Amended Complaint. Doc. 7. In his nine-count Amended Complaint, Plaintiff sues Lamar Advertising, Lamar Advertising Co., the Lamar Companies, and the Lamar Company, L.L.C. *Id.* Plaintiff seeks monetary relief from Defendants for violation of "Florida Statute Chap. 817, Sec. 535 Unlawful Filing of Records Against Plaintiff [sic] Real Property" (Count 1) and intentional infliction of emotional distress (Count 7). *Id.* at 1. Counts 2 through 6 are predicated on violations of another subsection of Section 535, but they do not re-allege the preceding

---

respectively, are permitted to manage and conduct causes therein."). Section 1654 merely provides that a party may proceed either *pro se* or through counsel. Relevant here, this provision does not give Plaintiff, a non-attorney, the right to conduct a case on behalf of someone else, such as his daughter.

[7] Plaintiff has moved for leave to file a Fourth Amended Complaint. Doc. 54. Because Amendment would be futile, the Court will deny leave to amend.

[8] The following statement of facts is derived from the Amended Complaint (Doc. 7), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983). The Court also considers documents attached to the Motion to Dismiss to the extent that they are central to the plaintiff's claim and undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

paragraphs and therefore are based on only the one to two sentences beneath the headings. *See* Doc. 7 at 12–13, ¶¶ 61–66. Count 8, which incorporates all preceding counts and allegations, sues for damages because of harm to his lifestyle. Doc. 7 at 21–22. And Count 9 sues for economic damages because of physical injuries. *Id.* at 22–23.

The allegations in the Amended Complaint are somewhat rambling and disjointed. However, construing Plaintiff's *pro se* pleadings liberally, a fair reading of the Amended Complaint reflects that Plaintiff's claims arise out of a dispute for rent and late fee payments owed by Defendants under a billboard sign lease. Doc. 7 ¶¶ 10–17. The advertising sign, owned by Defendants, was located on real property owned by Plaintiff and/or his daughter, Tichinia Jones. *Id.* Plaintiff and his daughter filed two eviction actions in Hillsborough County state court to evict Defendants from the property for the failure to pay rent and late fee payments pursuant to the lease agreement. *Id.* ¶ 18; *see* Case Nos. 17-CC-012407 and 17-CC-026201, in the County Court in and for Hillsborough County, Florida. Defendants filed a counterclaim in the state court eviction actions. Doc. 7 ¶ 44. Ultimately, Defendants obtained judgments against Plaintiff for attorney's fees and costs and filed liens against Plaintiff's real property. Doc. 18 at 23–35. The attorneys' fee judgments were satisfied when a third party purchased the property from Plaintiff and the purchase money was held in escrow to satisfy the judgments/liens. Doc. 17 at 124–26, 128.[9]

---

[9] The Court granted Defendants' motion requesting the Court take judicial notice of the state court proceedings. Docs. 17, 58.  Additionally, the Court may *sua sponte* take judicial notice of pleadings filed in the state court dockets, which were not included in Doc. 17.

In his Amended Complaint, Plaintiff alleges that on April 20, 1994, he acquired the parcel of real property located at 1745 East Hillsborough Avenue, Tampa, Florida. Doc. 7 ¶ 10. On December 3, 2003, Plaintiff purported to convey the property to his daughter, Tichinia Jones. *Id.* ¶ 11. However, when the property was sold in 2021, it was discovered that the quit claim of the property to his daughter in May 2021 was defective, and Tichinia Jones never held ownership to the subject property.[10] *Id.* ¶ 12.

In 2015 Lamar owned a billboard advertising sign that was located on Plaintiff's real property. *Id.* ¶ 13. In October 2016, Defendants had a one-year written agreement with Tichinia Jones regarding the lease of the property for purposes of the sign. *Id.* ¶ 14. According to Plaintiff, there was no written agreement between himself and Defendants from 2016 until 2021; the agreement was with his daughter and Defendants. *Id.* ¶¶ 14, 15. Plaintiff terminated the lease agreement in December 2016 because Defendants purportedly failed to timely mail their annual rent payment and to pay the associated late fee. *Id.* ¶¶ 16, 17. The lease agreement assessed a $175 fee for late rental payments whenever the lessee is delinquent, but Defendants failed to comply with the late fee payment. *Id.* ¶ 17.

In 2017, Plaintiff and his daughter filed an eviction action against Lamar in County Court to evict Lamar from Plaintiff's real property. *Id.* ¶ 18. Plaintiff alleges

---

[10] This fact is contradicted by the Quit Claim deed and the underlying pleadings in which the state court recognized Tichinia Jones as the owner of the property. *See* Doc. 17 at 118–19

that Lamar deprived Plaintiff of his rights under Florida law § 83.06.[11] *Id.* ¶ 19. According to Plaintiff, Defendants created false documents in the eviction case to support their claim for attorney's fees against Plaintiff and his daughter, through a "non-prevailing-party agreement." *Id.* ¶ 20. Plaintiff alleges the Defendants used lies and deception to induce the County Court to enter judgment against him and his daughter. *Id.* ¶ 21. The Defendants recorded liens against Plaintiff's commercial real estate in excess of $14,000, plus interest, for the attorney's fees award in their favor. *Id.* ¶ 22. Plaintiff alleges the lien was based on fraud and deception because the attorney's fee provision of the agreement pertained to "general insurance Indemnify." *Id.* ¶ 23. Plaintiff further contends that the Defendants deprived him of due process because they failed to mail notice of the court hearing date to his daughter's home mailing address, and she was unable to attend the hearing on September 14, 2017. *Id.* ¶ 24. Defendants wrongfully received judgment in their favor based upon the liability insurance attorney's fee provision. *Id.* ¶ 25.

Plaintiff asserts further wrongful conduct in Defendants' filing of their attorney's fee claim more than six months prior to the eviction action Plaintiff filed. *Id.* ¶ 26. Defendants failed to mail notice of the court hearing date to Plaintiff or his daughter. *Id.* ¶ 27. Plaintiff alleges the December 8, 2017 writ of execution obtained by Defendants against Plaintiff's real estate was fraudulently recorded. *Id.* ¶ 28. The

---

[11] Section 83.06, Florida Statutes, provides that "[w]hen any tenant refuses to give up possession of the premises at the end of the tenant's lease, the landlord . . . may demand of such tenant double the monthly rent, and may recover the same at the expiration of every month . . ." Fla. Stat. § 83.06(1).

falsified documents deprived Plaintiff of his rights under Florida's Constitution. *Id.* ¶ 29. Plaintiff further alleges the County Court granted Defendants' motion without a hearing, depriving him of notice or an opportunity to object. *Id.* ¶¶ 30–33. But Plaintiff also alleges that he attended the December 8, 2017, hearing but was denied a meaningful opportunity to be heard or to object. *Id.* ¶ 35. He indicates that he was "barred" and "escorted" from the courtroom on December 8, 2017, which prevented him from objecting to the forgery or presenting any evidence on his own behalf. *Id.* ¶ 40. Plaintiff asserts that Defendants "forced" Plaintiff to pay over $17,000. *Id.* ¶ 36.

Defendants purportedly disregarded official records in which Tichinia Jones was not listed as a property owner and recorded a lien against her for their own financial gain. *Id.* ¶ 42. Plaintiff alleges that Defendants falsified documents several times. *Id.* ¶ 43. According to Plaintiff, Defendants filed a frivolous counterclaim against him, scheming through the court system to add more to their attorney's fee claim. *Id.* ¶ 44.

In Count 1, Plaintiff sues Defendants under Florida Statute § 817.535 for unlawful filing of records against Plaintiff's real property. *Id.* ¶¶ 45–60. In 2021, when Defendants had liens on Plaintiff's commercial property, Defendants did not have an agreement with Plaintiff. *Id.* ¶ 46. Plaintiff alleges the Billboard Lease did not entitle Defendants to prevailing party attorney's fees against Jones. *Id.* ¶ 47. The Defendants' liens prevented Plaintiff's property from having a clear and clean title and interfered with the sale of the property. *Id.* ¶¶ 49, 50. Plaintiff asserts that Defendants should have

known their recorded liens were fraudulent because Tichinia Jones's name had been removed from the official records in 2017. *Id.* ¶ 52. Plaintiff requests the Court levy civil penalties against Defendants for filing of false records and to void the state court judgments. *Id.* ¶ 55. Plaintiff seeks actual damages, punitive damages, and civil penalties assessed against Defendants under Florida Statute § 817.535 for Defendants' alleged falsification of documents used to obtain judgment in their favor. *Id.* ¶ 60.

In Counts 2 through 6, Plaintiff seeks to impose statutory penalties under Florida Statute § 817.535 for the various documents filed in the public record that he claims are false. *Id.* ¶¶ 61–66.

In Count 7, Plaintiff sues for intentional infliction of emotional distress caused by Defendants' conduct in the state court litigation. Doc. 7 ¶¶ 67–105. He claims he has suffered physical and emotional injuries due to Defendants' fraudulent conduct in taking advantage of Plaintiff when he was only trying to protect his real estate from being stolen and to provide for his family. *Id.* ¶¶ 70–73. Plaintiff alleges he attended another hearing that occurred on June 16, 2022, requesting the state court void the judgment based on newly discovered evidence of the Defendants' fraudulent and wrongful conduct. *Id.* ¶ 95. According to Plaintiff, he was barred from making his arguments. *Id.* ¶ 101. He seeks damages for Defendants' "intentional, extreme, and outrageous conduct." *Id.* ¶ 105.

In Count 8 Plaintiff sues Defendants for "loss of enjoyment of life" because Defendants caused irreparable harm to his lifestyle by their conduct in the state court

litigation. *Id.* ¶ 10. In Count 9, he requests damages for physical injuries, actual economic damages, and loss of earning capacity. *Id.* ¶¶ 107–112.[12]

In the Amended Complaint, Plaintiff seeks $260,546.79[13] in damages, which he itemizes as follows: $4,726.99 for fraud lien; $14,793.50 for fraud lien; $17,264.97 for fraud lien; $9,700 for attorney fees incurred from March 2018 through January 2020 in state court Case No. 18-CA-012041; $15,000 in attorney's fees from January 2020 through June 2021 for representation of Plaintiff and Tichinia Jones in Case No. 18-CA-012041; $7,200 for attorney's fees representing Tichinia Jones in state court Case Nos. 17-CC-012407 and 17-CC-026201; $4,030.99 for hold over tenant rent; $1,236.50 for fees and costs associated with state court Case No. 16-CC-012358; $6,838.84 for hold over tenant rent; $2,646.00 for hold over rent late fees; $4,895 for attorney fees and out-of-pocket costs for Robert Eckard & Associates; $650 for court transcript and printing fee from July 2022; $9,247.00 for attorney's fees; $24,945.00 for medical expenses on intentional infliction of emotional distress; $12,500.00 for relief requested for statutory civil penalties; $124,326.00 for loss of earning capacity; and $400 for district court filing fee. Doc. 7 ¶¶ 113–128.

---

[12] The proposed Second Amended Complaint adds three new counts (labeled 7, 8, and 9) that seek statutory penalties for the filing of allegedly fraudulent documents, and he separates into two counts his claims for physical injuries (Count 12) and loss of earning capacity (Count 13). Doc. 28-1. Similarly, the proposed Third Amended Complaint (Doc. 40-1) does not include any new claim that is not barred by *Rooker-Feldman* or otherwise fails to state a claim. He adds a claim for fraud (Count 14), but again, his allegations arise out of dissatisfaction with the handling and disposition of his state court eviction lawsuits.

[13] Based on the Court's calculation, the itemized damages total $260,400.79, not $260,546.79.

Defendants, The Lamar Advertising Company, The Lamar Company L.L.C., and The Lamar Company d/b/a The Lamar Companies (collectively referred to as "Defendants" or "Lamar") move to dismiss Plaintiff's Amended Complaint arguing the *Rooker-Feldman* doctrine bars Plaintiff's claims. Doc. 18. Alternatively, Defendants contend that the doctrines of *res judicata*, collateral estoppel, and/or the litigation privilege warrant dismissal of Plaintiff's Amended Complaint. Defendants additionally argue that the Amended Complaint is a shotgun pleading and that it fails to state a cause of action. Defendants attach to their motion copies of the state court orders assessing fees and costs against Plaintiff from the county court litigation. Doc. 18 at 23–35. Additionally, Defendants request the Court take judicial notice of the court filings[14] in the cases of *Tichinia Jones and Robert Jones v. Lamar Company, LLC*, filed in the County Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, Case No.: 17-CC-012407; *Tichinia Jones and Robert Jones v. The Lamar Company*, filed in the County Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Case No.: 17-CC-026201; and *Tichinia Jones and Robert Jones v. Lamar Company, LLC*, filed in the District Court of Appeal of Florida – Second District; Case No.: 2D22-2338.[15] Doc. 17.

---

[14] The Court granted Defendants' motion requesting the Court take judicial notice of the state court proceedings. Doc. 58.

[15] The Second District Court of Appeal *per curiam* affirmed the appeal in Lamar's favor. *See Jones v. Lamar Co., LLC*, 360 So. 3d 1126 (Fla. 2d DCA 2023). The Supreme Court of Florida dismissed Plaintiff's appeal. *Jones v. Lamar Co., LLC*, No. SC20-93, 2020 WL 369481, at *1 (Fla. Jan. 22, 2020). Additionally, Plaintiff's petitions for writ of certiorari to the Second District Court of Appeal and to the United States Supreme Court were denied. *See Jones v.*

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.   *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).   The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

A facial attack on subject matter jurisdiction under Rule 12(b)(1) "requires [] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). In assessing a motion to dismiss pursuant to Rule 12(b)(1) the Court affords Plaintiff the same safeguards as those provided in opposing a Rule 12(b)(6)

---

*Lamar Co., LLC,* 141 S. Ct. 331 (2020); *Jones v. Lamar Co., LLC*, 291 So. 3d 559 (Fla. 2d DCA 2019).

motion, it considers all allegations of the complaint as true and is confined to the four corners of the complaint. *Id.*

Pleadings from *pro se* litigants are held to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, they still must meet minimal pleading standards. *Pugh v. Farmers Home Admin.*, 846 F. Supp. 60, 61 (M.D. Fla. 1994).

## B.     Documents Attached to Motion to Dismiss

"[A] court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]hen the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) (per curiam) (alteration in original) (quoting *Day*, 400 F.3d at 1276). "In this context, 'undisputed' means the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. Additionally, under Rule 201(b) of the Federal Rules of Evidence, judicial

notice of an adjudicative fact is appropriate when such fact (1) is generally known within the court's territorial jurisdiction; or (2) is capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

## IV.   DISCUSSION

Defendants request the Court dismiss Plaintiff's claims with prejudice based on the *Rooker-Feldman* doctrine.[16] Doc. 18. In general, the *Rooker-Feldman* doctrine prohibits federal district courts from reviewing state court decisions. *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009). The result of the *Rooker-Feldman* doctrine is to prevent district courts from exercising subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* does not, however, prevent a "district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021) (citing *Nicholson*, 558 F.3d at 1274 (quoting *Exxon Mobil*, 544 U.S. at 293)). The doctrine is not intended to be a "broad means of dismissing all claims related in

---

[16] Defendants alternatively argue that Plaintiff's claims are barred by the doctrines of *res judicata*, collateral estoppel and/or the litigation privilege. Defendants also argue that the Amended Complaint fails to state a claim.

one way or another to state court litigation. Its application is narrow and . . . simple." *Behr*, 8 F.4th at 1212. In *Exxon Mobil Corp.*, the Supreme Court sought to rein in the *Rooker-Feldman* doctrine by emphasizing the doctrine's limited applicability, which it has narrowly confined to suits that invite reversal or rejection of a state-court judgment. 544 U.S. 280, 284.

*Rooker Feldman* is properly invoked when Plaintiff complains of injuries caused by the state court judgment itself. *Id.* In determining whether *Rooker-Feldman* applies to bar a plaintiff's claims, the Eleventh Circuit has stated that a claim-by-claim approach is the correct approach. *Id.* at 1213. The Court addresses, in turn, each of Plaintiff's claims in the Amended Complaint.

### A.     Count 1 is Barred by *Rooker-Feldman*

Count 1 of the Amended Complaint sues Defendants for "unlawful filing of records against Plaintiff['s] real property" in violation of Florida Statute Chapter 817, Section 535. In relevant part, § 817.535, Fla. Stat., provides:

> (2)(a) A person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> . . .
> (8)(a) Any person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action under this section without regard to whether criminal charges are pursued under subsection (2).

Fla. Stat. § 817.535(2)(a), (8)(a).

15

In this count, Plaintiff alleges that he and his family were wrongfully forced to pay the attorney's fee liens out of the property's sale proceeds. Doc. 7 ¶¶ 46, 53.  He alleges that he was the rightful owner of the subject property, not his daughter Tichinia Jones. *Id.* ¶¶ 51, 52. By his allegations, Plaintiff seeks an order from this court deeming the judgments void and finding that the attorney fee liens were fraudulent. *Id.* ¶¶ 53, 55. Plaintiff seeks to recover the financial losses he incurred from the liens being satisfied from the sale of his property, as well as the legal fees and costs he incurred in litigating the state court eviction lawsuits in state court. Count 1 of Plaintiff's Amended Complaint specifically requests this Court void the state court attorney's fee judgments against him.

Although Plaintiff's claims here do not seek eviction as sought in the state court litigation, it remains the case that "a state court loser cannot avoid *Rooker-Feldman's* bar by cleverly cloaking [his] pleadings in the cloth of a different claim." *Behr*, 8 F.4th at 1211 (quoting *May v. Morgan County*, 878 F.3d 1001, 1005 (11th Cir. 2017)); *see also Feldman*, 460 U.S. at 468–69 (upholding dismissal for lack of jurisdiction because the Supreme Court recognized that plaintiffs' claims were one and the same where plaintiffs asked the district court to overturn the state court's judgment and to also declare that the state court acted "arbitrarily and capriciously" by denying their claim). Plaintiff seeks recovery under Florida Statute § 817.535 for Defendants' allegedly obtaining and recording fraudulent liens, but for Plaintiff to prevail, this Court must overturn the state court judgments. In Count 1, Plaintiff seeks reversal or rejection of

the state-court judgments. Pursuant to the *Rooker-Feldman* doctrine, this Court is without jurisdiction to do so.

## B.   Counts 2 through 6 Fail to State a Claim

In Counts 2 through 6 of the Amended Complaint, Plaintiff requests this Court assess civil penalties of $2,500 for each of Defendants' alleged violations of "SubSect.2" and removal of the alleged fraudulent documents from the official record. Plaintiff does not incorporate any of the prior factual allegations into Counts 2 through 6. And, therefore, the one to two sentence counts alleging statutory violations without any factual predicate fail to state a claim against these Defendants.

Even if the Court construes these counts to include prior allegations, the claims still fail. In Counts 2 through 6, Plaintiff seeks an assessment of statutory penalties for violation of "SubSect.2." Subsection (2) of Florida Statute § 817.535 provides that "[a] person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree[.]" Fla. Stat. § 817.535(2)(a). Thus, the provision provides for criminal penalties, not civil penalties. Plaintiff may not file criminal charges against the Defendants or obtain criminal penalties. Counts 2 through 6 fail to state a claim against these Defendants. Moreover, leave to amend would be futile because, as discussed in the section above, for Plaintiff to prevail on his claims that the documents are fraudulent would necessarily require this Court to overturn the state court judgments, which *Rooker-Feldman* precludes.

### C.  Count 7 Fails to State a Claim[17]

Count 7 of the Amended Complaint attempts to state a cause of action against Defendants for intentional infliction of emotional distress. Doc. 7 ¶¶ 67–105. The Florida Supreme Court adopted the following definition for the tort of intentional infliction of emotional distress ("IIED"): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *E. Airlines, Inc. v. King*, 557 So. 2d 574, 575 (Fla. 1990). The elements of a claim for IIED under Florida law are: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Liberty Mutual Insurance Co. v. Steadman,* 968 So. 2d 592, 594 (Fla. 2d DCA 2007). A complaint fails to state a claim for IIED if it contains merely conclusions, as opposed to facts supporting each element of an IIED cause of action. *See E. Airlines, Inc.*, 557 So. 2d at 576.

Relevant here, Plaintiff's Amended Complaint fails to allege facts that demonstrate outrageous conduct by Defendants. When evaluating the second factor, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). Moreover, liability will not exist where conduct that is

---

[17] *Rooker-Feldman* does not bar Plaintiff's claim in Count 7, given the doctrine's limited application. Moreover, because an IIED claim was not asserted or litigated in the state court proceedings, Defendants' arguments that the claim is barred by the doctrines of *res judicata* and/or collateral estoppel would similarly be unavailing.

extreme and outrageous is nevertheless privileged, such as where a defendant insists upon their legal rights in a permissible way, "even though [they are] well aware such insistence is certain to cause emotional distress." *Id.* at 279. In *Metropolitan Life Insurance Company*, the insurer had the right to demand proof of ineligibility for Medicare before providing coverage to an employee's wife. *Id.* Although this demand had "tragic results," the insurance company was asserting its legal rights in a permissible manner and its actions were considered privileged under the circumstances, and therefore the conduct could not serve as a basis for an IIED claim. *Id.* In *Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985), the court explained that the burden of objectively evaluating the claimed misconduct falls on the judiciary as a matter of law. Thus, it is up to the court to determine whether the conduct is "atrocious, and utterly intolerable in a civilized community" to support an IIED claim. *Id.* This is a high standard for a plaintiff to meet. For example, in *Clemente v. Horne,* 707 So. 2d 865, 867 (Fla. 3d DCA 1998), a landlord's constructive eviction of tenants who were in a "continuous state of severe emotional distress as a result of not having adequate alternative housing" did not rise to the level of extreme and outrageous conduct required to satisfy the second element of IIED.

Considering the allegations in Count 7 of the Amended Complaint, the Court finds that Plaintiff's allegations fall far short of alleging facts that show Defendants' conduct to be "atrocious, and utterly intolerable in a civilized community" to support his IIED claim. In Count 7, Plaintiff alleges as follows: Defendants intentionally inflicted emotional distress in their pursuits to collect payment from a judgment in

their favor. Doc. 7 ¶ 69. Defendants caused him to become "overwhelmingly stressed,"

as well as caused him "headaches, abdominal pain symptoms, high blood pressure"

and trouble sleeping. *Id.* ¶ 70. Defendants intentionally caused him stress that resulted

in Plaintiff having trouble eating, excessive diarrhea, weight loss, and an Ulcerative

Colitis diagnosis that did not exist prior to the Defendants' actions. *Id.* ¶¶ 81–83.

Defendants' "intent to cause serious emotional distress" has had an impact on

Plaintiff's physical health in other ways—including increased pressure in the eyes

leading to blindness and reduction in vision. *Id.* ¶¶ 71, 72. Defendants stressed Plaintiff

by their filing of motions in county court. *Id.* at ¶¶ 75, 76. Plaintiff had to hire several

different attorneys to "defend against" Defendants' "ongoing fraudulent activities"

and that cost him thousands of dollars, adding to his stress, headaches, and abdominal

pain. *Id.* ¶¶ 77, 78. According to Plaintiff, Defendants have "stolen, deceived and or

scammed through the Courts, Plaintiff, and his poor family out of about $38,000.00 in

one lump sum." *Id.* ¶ 80.   Plaintiff alleges Defendants pursued multiple avenues to

execute "fraudulent" judgments against him—including foreclosure and auction—and

did so without notice to the Plaintiff. *Id.* ¶¶ 84–86. Plaintiff further alleges that at a

June 16, 2022 hearing, Defendants "continued their evil path of intentional wrongful

conduct" when Defendants prevailed on their motions through "made-up fraudulent

statements" and Plaintiff was "deprived opportunity to enter the Court room, and

opportunity to seek justice and or relief from Defendant's fraudulent activities." *Id.* ¶¶

93–100. Plaintiff complains that in 2022, the county court "barred" him from the court

room and threatened sanctions against him if he attempted to file any more motions for relief. *Id.* ¶ 101.

Plaintiff alleges that "reasonable minds could conclude" Defendants committed outrageous conduct when they, among other things, intentionally filed false documents, unlawfully detained Plaintiff's real estate while refusing to acknowledge Plaintiff as a property owner, and intentionally filed for attorney's fees while refusing to return Plaintiff's proceeds from the property sale. *Id.* ¶ 103. For these reasons, Plaintiff submits that Defendants' conduct should be labelled as "intentional, extreme, and outrageous conduct, and utterly intolerable in a [c]ivilized [c]ommunity." *Id.* ¶ 105.

For the most part, Plaintiff's allegations in Count 7 are conclusory and without factual predicate. He repeatedly references Defendants' conduct as being fraudulent, intentional and outrageous, but he fails to allege any specific facts to substantiate these allegations. Considering the facts Plaintiff does allege, the allegations do not rise to the level of outrageousness to support a claim for IIED under Florida law. Moreover, Defendants' conduct in defending against the state court eviction claims and filing a counterclaim in connection with those proceedings was not only permissible and legal, but also would be privileged from any IIED claim, even if the conduct resulted in causing Plaintiff emotional distress. *See Metro. Life Ins. Co.*, 467 So. 2d at 279.

Although Plaintiff has not been granted leave to file another complaint, he has continued to file multiple motions seeking leave to amend and filed multiple proposed amended complaints. The Court has considered the proposed amended complaints for

the sole purpose of determining whether a more carefully drafted complaint would state a cause of action. After considering the additional allegations asserted by Plaintiff in the multiple subsequently proposed amended complaints, amendment would be futile. Plaintiff fails to allege any new facts that could be considered atrocious or outrageous that would give rise to a cause of action for IIED. In the pleading titled "First Amended Complaint" (Doc. 12)[18] filed September 13, 2023, Plaintiff alleges the same conclusory statements in his IIED claim as in the Amended Complaint, with only a few additional details. Plaintiff includes that he was treated at The Eye Institute of West Florida for his vision difficulties. Doc. 12 at ¶ 77. Plaintiff reasserts that the stress was a result of Plaintiff being "unable to prevail against such rich, and large billboard sign companies" that were "certainly taking advantage of a low-income family." *Id.* ¶ 80. Plaintiff also adds "alcohol abuse" to his physical symptoms resulting from the stress. *Id.* ¶ 86. Similarly, Plaintiff's proposed "Second Amended Complaint"[19] (Doc. 28), "Third Amended Complaint"[20] (Doc. 40), and "Fourth Amended Complaint"[21] (Doc. 55) contain no new factual allegations which would support a claim for IIED. Because Plaintiff fails to allege facts that state a claim for IIED against these Defendants, Count 7 of the Amended Complaint is due to be dismissed.

---

[18] Although labeled First Amended Complaint, Doc. 12 would be Plaintiff's second amended complaint. The Amended Complaint (Doc. 7) filed on August 11, 2023 is the first amended complaint.

[19] Although labeled Second Amended Complaint, this is Plaintiff's third amended complaint.

[20] Although labeled Third Amended Complaint, this is Plaintiff's fourth amended complaint.

[21] Although labeled Fourth Amended Complaint, this is Plaintiff's fifth amended complaint.

### D.    Counts 8 and 9 Fail to State a Claim

In Count 8 of the Amended Complaint, Plaintiff asserts a claim for "Loss of Enjoyment of Life." Doc. 7 at 21–22. Procedurally, this claim is defective because it realleges and incorporates by reference all prior counts of the amended complaint.  *See, e.g., Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (a complaint that contains multiple counts where each count adopts the allegations of all preceding counts constitutes a shotgun pleading). But, even more critical, the claim fails because there is no independent cause of action for "Loss of Enjoyment of Life" under Florida law.  Similarly, in Count 9 Plaintiff sues for "Actual Economic Damages because of Physical Injuries." Doc. 7 ¶ 109. These are not causes of action in the state of Florida, but rather are elements of damages.

### E.    Further Amendment is Futile

Plaintiff has filed multiple requests to amend his complaint. Docs. 20, 21, 28, 37, 40, 54. Plaintiff amended his complaint once as a matter of right under Rule 15. As discussed above, the Court finds further amendment would be futile. Accordingly, leave to amend the Amended Complaint is due to be denied. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[T]he denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) ("Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment . . . fails to state a claim.").

Accordingly, it is

**ORDERED**:

1.      Defendants' Amended Motion to Dismiss Amended Complaint (Doc. 18) is **GRANTED**. Count 1 of the Amended Complaint is dismissed for lack of jurisdiction. Counts 2 through 9 are dismissed with prejudice for failure to state a claim.

2.      Plaintiff's motions to amend (Docs. 20, 21, 28, 37, 40, 54) are **DENIED** as Plaintiff has already been afforded one opportunity to amend his complaint as a matter of right pursuant to Fed. R. Civ. P. 15 and because the Court finds further amendment would be futile.

3.      The Clerk is directed to terminate any pending motions and deadlines and close this case.

**DONE AND ORDERED** in Tampa, Florida on August 13, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Robert Jones, *pro se*
Counsel of Record